1THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   KENNETH WHEATON,                           CASE NO. C15-0518-JCC

10                          Petitioner,        ORDER DISMISSING HABEAS
                                               PETITION AND GRANTING
11          v.                                 CERTIFICATE OF
                                               APPEALABILITY
12   PATRICK GLEBE,

13                          Respondent.

14

15          This matter comes before the Court on the Report and Recommendation of the Honorable

16   Mary Alice Theiler, United States Magistrate Judge, (Dkt. No. 20), Petitioner's objections (Dkt.

17   No. 21), Petitioner's Motion for the Court to issue a Certificate of Appealability (Dkt. No. 22),

18   Respondent's Response to Petitioner's objections (Dkt. No. 23), and Petitioner's Motion for an

19   Evidentiary Hearing (Dkt. No. 24).

20          After reviewing each of Mr. Wheaton's objections *de novo*, the parties' briefing, and the

21   record, the Court hereby ADOPTS the R&R and DISMISSES the writ with one exception:

22   because reasonable jurists may find the Court's decision on Mr. Wheaton's courtroom closure

23   claim debatable, the Court ISSUES a certificate of appealability ("COA") on this issue alone. A

24   copy of this order is to be served to all parties and Judge Theiler.

25   **I.     BACKGROUND**

26          Mr. Wheaton is incarcerated at the Stafford Creek Correctional Center in Aberdeen,

Washington. (Dkt. No. 1 at 1.) After being tried by a jury, he was convicted of one count of felony harassment and two counts of second degree rape. (State Court Record, Dkt. No. 18, at Ex. 2 (Appellant Brief), p 2.) On May 19, 2008, Mr. Wheaton was sentenced to 111 months of imprisonment. (Dkt. No. 18 at Ex. 1, p. 5.)

Mr. Wheaton diligently pursued all available avenues for post-conviction relief. After appealing his conviction to the Washington Court of Appeals, which affirmed, Mr. Wheaton sought review by the Washington Supreme Court, which was denied without comment. (Dkt. No. 18 at Exs. 5 and 7.) In addition, Mr. Wheaton filed a personal restraint petition in May 2011 with the Washington Court of Appeals. (*Id.* at Exs. 9 and 10.) After his petition was dismissed, Mr. Wheaton filed a motion for reconsideration of the dismissal, which was treated as a motion for discretionary review by the Washington State Supreme Court. (*Id.* at Exs. 20 and 21.) Finally, Mr. Wheaton replaced his motion for reconsideration with a true motion for discretionary review, which was denied both initially and upon Mr. Wheaton's "motion to modify." (*Id.* at Exs. 22, 23, 34–36.)

In April 2015, Mr. Wheaton filed his federal habeas petition. (Dkt. No. 1.) Upon petitioning this Court, Mr. Wheaton identifies three grounds for relief: (1) his courtroom was closed in violation of his Sixth Amendment right to a public trial, (2) his jury contained biased members, and (3) his trial counsel was constitutionally ineffective. (*See* Dkt. No. 3.)

Mr. Wheaton alleges that his trial courtroom was functionally closed during *voir dire*, in violation of his Sixth Amendment right to a public trial as well as the trial court's local rules. (Dkt. No. 3 at 5; Dkt. No. 21 at 2.) This was achieved, he alleges, by the trial judge drawing so many potential jurors for the jury pool as to fill the courtroom past capacity. (Dkt. No. 3 at 5.) Mr. Wheaton has also offered evidence from his parents who reported unsuccessfully attempting to access the courtroom around the time of *voir dire*. (*Id.*)

Mr. Wheaton further argues that it was a violation of his rights to allow biased jurors onto his jury. (Dkt. No. 3 at 7.) During *voir dire*, several jurors expressed hesitation as to their ability

to be impartial: Juror Number 15 said that she "would question" whether she could be impartial in evaluating defendant and victim testimony; Juror Number 23 indicated that, based on personal experiences, she "may end up being biased," and would probably be "uncomfortable" hearing the case; and Juror Number 37 said that she could not "give a true 100% fair thought," to the trial based on her feelings about the allegations. (Dkt. No. 18 at Ex. 2, pp. 3–8.)

Finally, in his response, but not in his petition, Mr. Wheaton presents arguments that his trial counsel was ineffective. (*See* Dkt. No. 3; Dkt. No. 19 at 4–5.)

## II.   DISCUSSION

### A.   Standard of Review

A district court reviews *de novo* the parts of a Magistrate Judge's report to which any party objects. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition can only be granted if a state-court adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), federal law is "clearly established" only if it is based on a United States Supreme Court holding that governed at the time of the relevant state-court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not enough that the federal court be persuaded that a state-court decision is erroneous. *Id.* at 411. Rather, the appropriate inquiry is whether the state court application of federal law was objectively unreasonable. *Id.* at 409.

Under § 2254(d)(2), a state-court determination of facts is presumed correct unless rebutted by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (internal citation omitted). AEDPA demands deference to state court findings of fact, subject to a

1  federal court's "real, credible doubts about the veracity of essential evidence and the person who

2  created it." *Hall v. Dir. of Corrections*, 343 F.3d 976, 984 n.8 (9th Cir. 2003).

3  **B.      Exhaustion of State Remedies**

4  Prior to seeing federal habeas corpus relief, a petitioner must exhaust—or use up—his or

5  her available state remedies. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S.

6  270, 275 (1971). This exhaustion requirement may be met by one of two methods. First, a

7  petitioner may "fairly present" each claim in each appropriate state court. *Scott v. Schriro*, 567

8  F.3d 573, 582 (9th Cir. 2009). Second, a petitioner may show "technical exhaustion," by either:

9  (1) demonstrating that the claims are procedurally barred under state law and that the alleged

10 violation of federal law caused the default and resulted in actual prejudice, or (2) demonstrating

11 that failure to consider the claims would result in a "fundamental miscarriage of justice."

12 *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

13 **C.      Evidentiary Hearing**

14 An evidentiary hearing is appropriate if the habeas petitioner meets two conditions: (1)

15 "He must allege facts which, if proven, would entitle him to relief, and (2) show that he did not

16 receive a full and fair hearing in a state court either at the time of trial or in a collateral

17 proceeding." *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (internal quotation marks and

18 citation omitted). While Mr. Wheaton has alleged facts with respect to the closure of his trial

19 courtroom which, if proven, may entitle him to some relief, he has not established that the

20 hearings he has already received in state court were not full or fair. Mr. Wheaton has not met

21 both of these conditions, the Court finds it unnecessary to hold an evidentiary hearing. The R&R

22 is ADOPTED in this respect.

23 **D.      Mr. Wheaton's Claims and Objections**

24 Mr. Wheaton's objections to the Report and Recommendation coincide with his main

25 three claims for relief raised throughout his state proceedings and in his petition for habeas. He

26 claims that (1) during *voir dire* in his jury trial, the courtroom was closed in violation of his Sixth

ORDER DISMISSING HABEAS PETITION AND
GRANTING CERTIFICATE OF APPEALABILITY
PAGE - 4

Amendment right to a public trial, and the Washington Court of Appeals decision concluding otherwise was unreasonable; (2) his claim that biased jurors were allowed on his jury should be considered on its merits; and (3) his ineffective assistance of counsel claim is properly raised and relief should be granted on those grounds. (Dkt. Nos. 3 and 21.)

**1.     Courtroom Closure**

The parties agree that Mr. Wheaton fairly presented his courtroom closure claim to the Washington Court of Appeals and the Washington State Supreme Court. (Dkt. No. 20 at 6.) Upon Mr. Wheaton's objection, the Court reviews whether or not the decision of the Washington Court of Appeals that Mr. Wheaton's Sixth Amendment rights were not violated constitutes an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The Sixth Amendment guarantees accused persons the "right to a speedy and public trial." U.S. Const. Amend. VI. This public trial right extends to *voir dire*. *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 508–513 (1984). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *United States v. Withers*, 638 F.3d 1055, 1063 (9th Cir. 2011) (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)). The right to a public trial entitles a criminal defendant to "at the very least . . . have his friends, relatives and counsel present, no matter with what offense he may be charged."*United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) (citing *In re Oliver*, 333 U.S. 257, 272 (1948)).

The Ninth Circuit has found that "[h]abeas relief is granted or a new trial required only for . . .two specific categories of substantial [courtroom] closure." *United States v. Rivera*, 682 F.3d 1223, 1231–32 (9th Cir. 2012). The first category is "[w]here the courtroom was totally closed to the general public at some critical juncture in the proceedings," and the second is "[where] the court excluded a friend or relative of the defendant." *Id.* (citing *Braun v. Powell*, 227 F.3d 908, 917 n. 6 (7th Cir. 2000) (collecting cases)). While there is not conclusive evidence

ORDER DISMISSING HABEAS PETITION AND
GRANTING CERTIFICATE OF APPEALABILITY
PAGE - 5

on the record before this Court of either form of closure, Mr. Wheaton has presented evidence

such that this Court considers it possible that either one, or both, forms of closure occurred.

The Ninth Circuit has found that a trial judge ordering spectators out of the courtroom in

order to accommodate a large jury pool constituted a "closure," for Sixth Amendment purposes.

*United States v. Withers*, 638 F.3d 1055, 1064 (9th Cir. 2010) (remanding to district court for

further findings). In *Withers*, the trial judge said on record:

> "We're going to take a recess to bring down the jury panel. All you people out
> there are going to have to be out of the courtroom. We have to bring in a very big
> panel of prospective jurors and we need the entire courtroom, so all of you out."

*Id.* In *Rivera*, the defendant's Sixth Amendment rights were considered implicated when

the district judge, on record, limited sentencing to "just the people involved." *Rivera*, 682 F.3d at

1230.

Here, King County Superior Court Judge Laura Gene Middaugh discussed on the record

that the courtroom's capacity of 49 prospective jurors was "cutting it really close" in reference to

trying to get a large enough jury pool and to fit more people into the courtroom. (Dkt. No. 18 at

Ex. 38 (Trial Transcript) at p. 126.) At the prosecutor's suggestion that the courtroom could fit

about 60 potential jurors who would then be "whittled down" after the introductory

questionnaire, Judge Middaugh first remarked, "[e]xcept that we have to have them all in here

for the introductory remarks." (*Id.*) Judge Middaugh then stated, "In this case, we're going to fill

up the two front rows because we don't have an in custody defendant." (*Id.*) Alluding to an

inapplicable "jail rule," Judge Middaugh finally stated, "Mr. Wheaton is not in custody, so

they're not going to be here to protest. So that should hopefully do it." (*Id.* at 127.) It is not clear

from the transcript to whom Judge Middaugh was referring when she stated, "they're not going

to be here to protest."

Under AEDPA, this Court is limited in its review to (1) whether the state court decisions

upholding Mr. Wheaton's convictions were contrary to, or an unreasonable application of,

"clearly established Federal law" or (2) if it was an unreasonable determination of the facts to

1   dismiss Mr. Wheaton's courtroom closure claim.

2          While it is a close call, the Court does not find Judge Middaugh's remarks alone to rise to

3   the level of closing her courtroom. At no point did the Judge, on record, address members of the

4   public or tell them to leave. However, this Court finds it reasonable to entertain the possibility

5   that either in filling her courtroom to capacity or in locking the doors, Judge Middaugh closed

6   her courtroom.

7          The other evidence of a court closure comes from Mr. Wheaton's father, Paul Wheaton

8   ("Paul"). (Dkt. No. 18, Ex. 22, p. 17 (marked as Ex. A to Ex. 22).) In his affidavit, Paul describes

9   arriving at Judge Middaugh's courtroom on the morning of April 3, 2008 but being unable to

10  open the courtroom door. (*Id.*) Not able to get into Judge Middaugh's courtroom, Paul then

11  walked around the court's rotunda, used the restroom, and sat in on an open courtroom. (*Id.*)

12  Later, when he came back into the rotunda, he saw his son, Kenneth Wheaton, with his defense

13  attorney. (*Id.*) After the lunch break, Paul went into Judge Middaugh's courtroom to watch the

14  beginning of Mr. Wheaton's trial. (*Id.*)

15         Previous courts to review Mr. Wheaton's case have taken particular note of the fact that,

16  while Paul recalled being locked out of Judge Middaugh's courtroom in the morning, he writes,

17  "I do not remember the exact time." (*Id.*) However, given the timing of Paul's presence in the

18  courthouse, his having waited nearby, and next seeing his son and the trial commence after a

19  break—none of which is hearsay evidence—the Court considers it reasonable to conclude that he

20  was locked out of Judge Middaugh's courtroom during *voir dire*.

21         Despite this Court's misgivings about the closure of Judge Middaugh's courtroom, it is

22  not enough that the Court would have decided the issue differently—the state court adjudication

23  must have been *objectively* unreasonable. *Williams v. Taylor*, 529 U.S. 362, 409 (2000)

24  (emphasis added). This is a high burden. While the Court finds that Mr. Wheaton has not met

25  this burden, reasonable jurists may find the Court's assessment of his courtroom closure claim

26

ORDER DISMISSING HABEAS PETITION AND
GRANTING CERTIFICATE OF APPEALABILITY
PAGE - 7

1    debatable. *Slack v. McDaniel*, 529 U.S. 473, 483–4 (2000). As such, the Court ISSUES a COA

2    on this issue alone.

3    **2.    Biased Jurors**

4         In his petition as well as his objections, Mr. Wheaton contends that his trial court denied

5    his right to a fair trial "by seating biased jurors." (Dkt. No. 3 at 3–4, 7; Dkt. No. 21 at 4–5.) In

6    raising the claim, Mr. Wheaton argues that several jurors put on his jury expressed some degree

7    of bias during *voir dire*. (Dkt. No. 3 at 7.) For example, one juror had a family member who had

8    been the victim of violent crime and expressed that it was "still a point of anger." (*Id.*) Another

9    juror, presumably when asked about potential biases, said that he or she "might be swayed." (*Id.*)

10   Another juror indicated that he or she would weigh the testimony of a doctor or nurse more

11   favorably than others. (*Id.*)

12        Mr. Wheaton's habeas petition indicates that he raised the issue of unaddressed bias on

13   his jury on direct appeal as well as in his personal restraint petition to the Washington State

14   Supreme Court. (Dkt. No. 3 at 7.) The question of juror bias was briefed on Mr. Wheaton's direct

15   appeal. (State Court Record, Dkt. No. 18, at Ex. 2 (Appellant Brief), pp. 3–8, 23–27.) In seeking

16   review from the Washington State Supreme Court, however, the issue was not raised. (Dkt. No.

17   18 at Ex. 22 (Motion for Discretionary Review), pp. 1–15.) Fair presentation of a claim such that

18   it has been properly exhausted requires that the claim be raised "in each appropriate state court

19   including a state supreme court with powers of discretionary review." *Baldwin v. Reese*, 541

20   U.S. 27, 29 (2004) (internal parenthesis omitted). In sum, Judge Theiler correctly concluded that,

21   because the biased jury claim was not addressed in his motion for Washington Supreme Court

22   review, the claim was not properly exhausted. (Dkt. No. 20 at 6.)

23        The Court acknowledges that Mr. Wheaton has made his best efforts to raise each of his

24   claims—including his biased jury claim—at every stage of his post-conviction review. (Dkt. No.

25   21 at 4.) Notably, in his objections, Mr. Wheaton writes that he "does not believe that his lack of

26

ORDER DISMISSING HABEAS PETITION AND
GRANTING CERTIFICATE OF APPEALABILITY
PAGE - 8

1  knowledge of the legal system should keep him from finally getting a fair trial." (*Id.* at 5.) While

2  the Court sympathizes with Mr. Wheaton's frustration, its review of Mr. Wheaton's claims is

3  limited by AEDPA's strict procedural requirements. Absent technical exhaustion, there is no

4  jurisdictional basis for the Court to review Mr. Wheaton's biased juror claim. The Court does not

5  consider the biased juror claim technically exhausted, particularly because the alleged violation

6  of federal law—allowing biased jurors to sit on his trial—was not the cause of Mr. Wheaton's

7  failure to raise the issue to the Washington State Supreme Court.

8        Upon *de novo* review, this Court finds that Mr. Wheaton's biased juror claim was not

9  properly exhausted in the state courts. Accordingly, the Report and Recommendation is

10  ADOPTED with respect to this claim.

11  **3.    Ineffective Assistance of Counsel**

12        The grievances listed in Mr. Wheaton's ineffective assistance of counsel claim, while

13  distressing, may not be considered by the Court at this stage. (Dkt. No. 19 at 4–5.) Mr. Wheaton

14  asserts that his attorney was deficient because, *inter alia*, he admitted to being "unprepared" on

15  the first day of trial, failed to interview any defense witnesses, failed to introduce impeachment

16  evidence, failed to interview state's witnesses, and had Mr. Wheaton "write his own questions"

17  despite a lack of legal knowledge and a learning disability. (Dkt. No. 19 at 4–5.)

18        While Mr. Wheaton raised his ineffective assistance of counsel claim throughout his state

19  proceedings, it was not listed in his habeas petition itself (Dkt. No. 3.) Upon its own *de novo*

20  review, the Court agrees with the reasoning set forth by Judge Theiler: Mr. Wheaton may only

21  add this claim by amending his habeas petition to include claims that "relate back" to his

22  courtroom closure and juror bias claims. *See* Dkt. No. 20 at 3–4; *Cacoperdo v. Demosthenes*, 37

23  F.3d 504, 507 (9th Cir. 1994). The ineffective assistance of counsel claims that would "relate

24  back" to Mr. Wheaton's habeas petition are those that relate to his counsel's performance during

25  *voir dire* and in failing to object to the closure of the courtroom. (Dkt. No. 19 at 5.) The *voir dire*

26  ineffective assistance of counsel claim was not properly exhausted; while objections were

ORDER DISMISSING HABEAS PETITION AND
GRANTING CERTIFICATE OF APPEALABILITY
PAGE - 9

presented in the state courts based on the *voir dire* proceedings and ineffective assistance of counsel generally, the specific question of whether counsel was constitutionally ineffective *based on voir dire* was not raised. (Dkt. No. 18 at Exs. 10, 22.) Similarly, upon review of the record this Court concludes that Mr. Wheaton failed to fairly present his courtroom closure-based ineffective assistance claim in his petition to the Washington State Supreme Court. (*Id.* at Ex. 22.) The closest statement in the petition occurs when Mr. Wheaton argues that his counsel was ineffective by "not objecting to obvious happenings in the trial." (*Id.* at Ex. 22, p. 14.) Under AEDPA, this is not enough for the Court to consider the merits of his claim.[1]

Accordingly, upon *de novo* review, the Court ADOPTS the Report and Recommendation with respect to Mr. Wheaton's ineffective assistance of counsel claim.

**CONCLUSION**

After reviewing each of Mr. Wheaton's objections *de novo*, the Court hereby ADOPTS the R&R and DISMISSES the writ with one exception: because reasonable jurists may find the Court's decision on Mr. Wheaton's courtroom closure claim debatable, the Court ISSUES a certificate of appealability ("COA") on this issue alone. A copy of this order is to be served to all parties and Judge Theiler.

//

//

//

//

//

//

---

[1] While the Court does not reach the merits of this claim, it notes that Mr. Wheaton would have to meet the demanding test set forth by *Strickland v. Washington*, 466 U.S. 668 (1984). To raise a valid claim for ineffective assistance of counsel, a defendant must show (1) that his attorney's performance was "deficient," in that it "fell below an objective standard of reasonableness," and (2) that he was prejudiced by his attorney's actions or omissions, by demonstrating that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88.

1   DATED this 2nd day of February 2016.

2

3

4

5

6

7

8                                    John C. Coughenour
                                     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DISMISSING HABEAS PETITION AND
GRANTING CERTIFICATE OF APPEALABILITY
PAGE - 11